IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**

RICHARD NELSON,

        Plaintiff,

v.                                       CIVIL ACTION NO.   2:25-cv-00075

M. W. FISHER, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendants' Motion for Summary Judgment* (Document 39), filed by Defendant Lt. Truitt, *Defendant Lt. Truitt's Memorandum of Law in Support of Motion for Summary Judgment* (Document 40), the *Plaintiff's Memorandum in Opposition to Defendant Truitt's Motion for Summary Judgment* (Document 45), the *Agreed Motion to Extend Time Frame to File Reply* (Document 50), and *Defendant Lt. Truitt's Reply to Plaintiff's Memorandum in Opposition to Defendant Truitt's Motion for Summary Judgment* (Document 51), together with all exhibits.

The Court has also reviewed *Defendant M.W. Fisher's Motion for Partial Summary Judgment* (Document 43), *Defendant M.W. Fisher's Memorandum of Law in Support of His Motion for Partial Summary Judgment* (Document 44), the *Plaintiff's Memorandum in Opposition to Defendant Fisher's Motion for Partial Summary Judgment* (Document 47), *Defendant M.W. Fisher's Reply in Support of His Motion for Partial Summary Judgment* (Document 49), *Defendant M.W. Fisher's Joinder to ECF No. 39 and ECF No. 40* (Document 52), and the *Plaintiff's*

*Opposition to Defendant Fisher's Motion for Joinder to ECF No 39 and 40* (Document 54), together with all exhibits.   For the reasons stated herein, the Court finds that Defendant Fisher's motion for joinder should be denied, both motions for summary judgment should be granted as to Count Three, to the extent Count Three seeks to allege an independent cause of action, and denied as to the remaining counts.

## FACTS[1]

The Plaintiff, Richard Nelson, initiated this action with a *Complaint* (Document 1-1) filed in the Circuit Court of Kanawha County on or about January 8, 2025.   He named the City of St. Albans, M.W. Fisher, Lt. Truitt, and John Doe as Defendants.   The Defendants removed the matter to this Court on February 7, 2025, and the City of St. Albans was dismissed by stipulation on January 30, 2026.   The Plaintiff brought the following causes of action:   Violations of 42 U.S.C. §1983 under the Fourth Amendment of the United States Constitution for excessive force; state law battery claims; and reckless/malicious conduct under W.Va. Code § 29-12A-5(b)(2).[2]

Mr. Nelson went to a bar called The Choo after work on January 5, 2023, where he played pool and drank a couple of beers over an hour or two.   He went through a nearby McDonald's drive-thru and was pulled over on his way home.   Defendant Fisher activated his lights to conduct a traffic stop of Mr. Nelson, and Mr. Nelson pulled over and turned off his truck.   Defendant Fisher approached and spoke to him through the closed rear passenger window, but Mr. Nelson could not hear him until he lowered the window.   Defendant Fisher immediately ordered him out

---

1 The facts are recounted in the light most favorable to the Plaintiff as the non-moving party.   The Defendants dispute much of his account of the incident.   They contend that Mr. Nelson verbally refused to exit the vehicle, braced himself to resist their efforts to remove him, and that they exerted force by striking him while he was still in the vehicle to get him to let go of the steering wheel and reduce his resistance so that they could remove him from vehicle and effectuate an arrest.

2 The Complaint also contained a deliberate indifference claim against the City of St. Albans, which is no longer pending.

of the truck, without stating the basis for the stop or asking for his license or registration. Mr. Nelson responded by asking why he was being pulled over. Defendant Fisher then approached the driver's side window and again directed Mr. Nelson to get out of the truck. Mr. Nelson again asked why he was being pulled over. He did not exit the vehicle. Defendant Fisher did not respond to his inquiry as to the basis of the stop. Defendant Truitt then approached and told Mr. Nelson to "get the fuck out of the truck." (Nelson Dep. at 51::12-13) (Document 45-1.)

Without giving Mr. Nelson an opportunity to comply, the officers immediately pulled him out of the vehicle. Defendant Truitt pulled Mr. Nelson's door open as he approached. As Mr. Nelson described it: "When he pulled me out of the truck, I was off balance immediately. And that's when the punches started raining down from all directions. I was in a daze. I got clobbered the first time because I was bent over, off balance. And the punches didn't stop, and I was slammed headfirst into the pavement." (*Id.* at 55::11-16.) Both officers punched him repeatedly, and Defendant Truitt slammed him to the ground. Then "[t]hey were on top of me before I knew what happened. I woke up – when I had my senses, I was sitting in the back of the cruiser bleeding profusely from my face and my rights being read to me." (*Id.* at 60::1-4.) He testified that he offered no physical resistance at any point during his interaction with the officers, and he posed no threat to the officers or anyone else. The officers never told Mr. Nelson the reason for the traffic stop.

The Defendants brought Mr. Nelson to the police station. He continued to bleed from his ears, nose, and mouth, and they eventually brought people from the adjacent fire department to try to clean up his face, although the bleeding continued. They brought him to Charleston, where he eventually saw a magistrate judge, was released on his own recognizance, and was picked up by

3

his sister.   At the request of another Lieutenant with the St. Albans Police Department who he understood to be investigating the incident, he wrote a brief statement describing what had happened the next morning.   He then went to the hospital for tests and treatment.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).   A "material fact" is a fact that could affect the outcome of the case.  *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.   *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.   When determining whether summary judgment is appropriate, a court must view all factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.  *Hoschar*, 739 F.3d at 169.   However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."  *Anderson*, 477 U.S. at 256.   "At the summary judgment stage, the non-moving party

4

must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

Both Defendants move for summary judgment as to Count III, the Plaintiff's claim for recklessness/malicious activity, arguing that there is no independent cause of action for recklessness or malice. Defendant Truitt argues that he is entitled to qualified immunity as to the excessive force claim. He contends that the Plaintiff's failure to comply with repeated orders to exit his vehicle justified the use of force, particularly given that the Plaintiff is physically larger than the Defendants. Defendant Truitt further argues that the Plaintiff's battery claim fails as a matter of law because the force used was necessary to effectuate his lawful arrest for obstruction,

based on his failure to comply with orders to exit the vehicle. In addition, he contends that he is entitled to statutory immunity for punitive damages.

The Plaintiff argues that he was punched, beaten, and slammed onto the concrete *after* he was removed from the vehicle. He contends that the Defendants beat him until he was unconscious, while he posed no threat. He argues that if a jury believes his version of events, the Defendants would not be entitled to qualified immunity. He further argues that he set forth evidence supporting the elements of each claim. Finally, the Plaintiff contends that W. Va. Code § 29-12A-3 creates an independent cause of action. Even if the Court rejects Count Three as an independent cause of action, he urges the Court to leave the questions of whether the Defendants acted with malicious purpose, in bad faith, or in a wanton or reckless manner to the jury. The Plaintiff argues that W. Va. Code 29-12A-7(a) bars punitive damages only against political subdivisions, not against the employees of political subdivisions.

### A. Qualified Immunity

Qualified immunity is an affirmative defense intended to shield public officials from civil suits arising out of their performance of job-related duties. *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation marks omitted.) The defense of qualified immunity is available unless the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff…." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (internal emphases omitted). Officials are protected even if they make reasonable mistakes of

6

fact or law, so long as they do not violate a clearly established statutory or constitutional right. *Pearson*, 555 U.S. at 231–32. "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted).

The reasonableness analysis is objective. Courts must "examine[] only the actions at issue and measure[] them against what a reasonable police officer would do under the circumstances," but the inquiry "must be filtered through the lens of the officer's perceptions at the time of the incident." *Rowland v. Perry*, 41 F.3d 167, 172-73 (4th Cir. 1994). "[T]he officer's subjective state of mind is not relevant to the qualified immunity inquiry but his perceptions of the objective facts of the incident in question are." *Id.* at 173.

The Fourth Amendment provides a right to be free from unreasonable seizures, including the use of excessive force. *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). "The question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001). "In the context of an ongoing police encounter . . . we focus on the moment that the force is employed." *Est. of Jones by Jones v. City of Martinsburg, W. Virginia*, 961 F.3d 661, 668 (4th Cir. 2020), *as amended* (June 10, 2020) (internal quotation marks omitted). Deadly force is not permissible "[w]here the suspect poses no immediate threat to the officer and no threat to others," even if a felony suspect may otherwise flee and escape arrest. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

7

The Fourth Circuit has explained, in the context of a qualified immunity defense to excessive force allegations, that "the objective reasonableness of force [should be viewed] in full context, with an eye toward the proportionality of the force in light of all the circumstances." *Rowland v. Perry*, 41 F.3d 167, 173-74 (4th Cir. 1994) (summarizing the facts in that case to state that "it is impossible to escape the conclusion that a man suffered a serious leg injury over a lost five dollar bill," where an officer pursued and tackled a man who had picked up and failed to return a five dollar bill dropped by a woman at a bus station, after the officer ordered him to return the money). Rather than examining a single aspect of an incident in isolation, courts are to evaluate the objective reasonableness based on the totality of circumstances. *Id.*[3] Factors to consider in excessive force cases include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Defendant Truitt relies heavily on a recent Fourth Circuit decision, *Nazario v. Gutierrez*, for the proposition that officers are entitled to qualified immunity for using force to remove a driver from a vehicle when the driver fails to promptly comply with an order to exit the vehicle during a traffic stop. 103 F.4th 213 (4th Cir. 2024). However, in *Nazario*, officers used pepper spray on a motorist who had not complied with repeated orders to exit the vehicles while the motorist was still in the vehicle, and the court found that the officers "were not on notice that their use of pepper spray violated a clearly established right." *Id.* at 236. The court found that the

---

3 The Fourth Circuit has clarified that not viewing events in isolation means that "the events should [not] be reviewed outside the context of the conduct that precipitated the seizure." *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005). However, "the reasonableness of force employed can turn on a change of circumstances during an encounter lasting only a few seconds," and when the justification for a use of force is eliminated, the use of force must cease. *Id.*

8

force *was* excessive, in part for reasons equally applicable to this case: the officers had probable cause to suspect the motorist of only minor offenses (a traffic infraction and misdemeanor obstruction offense), and the motorist remained calm, asking the reason for the stop, without any actions to indicate that he posed a threat.   *Id*. at 234.   The Plaintiff in *Nazario* did engage in minor physical resistance by pulling the car door closed as an officer began to open it, but otherwise, like Mr. Nelson, offered no resistance beyond seeking an explanation for orders before complying.   *Id.* at 234-35.   The Fourth Circuit found that the use of pepper spray was "very excessive" under those circumstances.[4]

Mr. Nelson was suspected of minor, non-violent offense(s).   While traffic stops can be dangerous for officers, Mr. Nelson did not verbally or physically indicate any threat to the officers or others.   He did not comply with orders to exit the vehicle but did not offer active resistance or attempt to flee.   The officers pulled him from the vehicle, then repeatedly struck and punched him in the head and slammed him head-first into the pavement.   He was left unconscious.   In contrast to *Nazario*, accepting Mr. Nelson's version of events, the officers exerted force against Mr. Nelson after he was out of the vehicle and all justification for use of force had been eliminated.   He was knocked unconscious and had multiple facial injuries with bleeding and swelling.   The Fourth Circuit has squarely held that an individual's "slight resistance" does not justify "escalation of the conflict" or an officer's "decision to punch [the individual] repeatedly."   *Smith v. Ray*, 781 F.3d 95, 103 (4th Cir. 2015) (explaining that "no reasonable officer could have believed that, rather than answer the previously compliant young woman's legitimate question concerning why Ray

---

4 Although the facts that supported qualified immunity on the excessive force claim in *Navario* are not present in this case, it is worth noting that the message law enforcement should take away from *Navario* is that the force used *was* excessive and use of similar force under similar circumstances is illegal (and, with *Navario* as circuit precedent, unprotected by qualified immunity in the future).

was suddenly grabbing her, Ray was justified in throwing her to the ground, slamming his knee into her back, and wrenching her arm behind her").[5]   Should the jury find Mr. Nelson's account of the incident credible, the *Graham* factors clearly establish that the Defendants used excessive force, and binding Supreme Court and Circuit precedent placed the officers on notice that the force used was not justified under the circumstances.   Therefore, the motion for summary judgment on the basis of qualified immunity should be denied.

### B.  Battery

For the reasons discussed above, the Plaintiff has presented sufficient evidence, should a jury find it credible, to support a finding that the Defendants used excessive force.   Therefore, the motion for summary judgment as to the state law battery claim must be denied.

### C.  W. Va. Code § 29-12A-5(b)(2) – Reckless/Malicious Conduct

West Virginia Code § 29-12A-5(b) provides that "an employee of a political subdivision is immune from liability unless one of the following applies…(2) his or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."   W. Va. Code § 29-12A-5(b)(2).   This Court has previously found that "Subsection (b)(2) does not provide an independent cause of action but only provides exceptions to West Virginia's general rule of tort immunity for employees of political subdivisions."   *Casto v. Thompson*, No. 2:23-CV-00798, 2024 WL

---

5 Defendant Truitt insists that Mr. Nelson was not entitled to an explanation for the directive to exit the vehicle.   (*See, e.g.* Truitt Mem. at 10) (Nelson "thought he was owed an explanation, and he was not owed any explanation as a matter of law.") While there may be no legal obligation to provide such an explanation, a factfinder considering the reasonableness of the use of force under the *Graham* factors may consider Mr. Nelson's lack of compliance in the context of the officers' refusal to explain the basis for the stop or for the directive to exit the vehicle.   As in *Smith*, an officer choosing to use force to gain compliance rather than answering a legitimate question suggests unjustified escalation.   A factfinder could view a person's question about the basis of an order as less of an indication of resistance or noncompliance than a flat rejection of the order, and if a fact-finder believes that "an explanation" would have been sufficient for officers to obtain compliance with their lawful orders, the officers' decision to instead beat someone unconscious may appear quite unreasonable.

10

4028033, at *4 (S.D.W. Va. Sept. 3, 2024) (Berger, J.).   Therefore, both motions for summary judgment should be granted to the extent Count Three seeks to state an independent cause of action. This ruling does not preclude evidence or argument on the issues of whether the Defendants acted with malicious purpose, in bad faith, or in a wanton or reckless manner, to the extent those matters are at issue in trial.

### D.  Punitive Damages

Defendant Truitt argues that punitive are unavailable against him under W. Va. Code § 29-12A-7(a) because he is the employee of a political subdivision.   The West Virginia Supreme Court has held that "West Virginia Code § 29-12A-7(a) prohibits the recovery of punitive damages against a political subdivision employee sued in an official capacity but does not prohibit the recovery of punitive damages against a political subdivision employee sued in an individual capacity."   Syl. Pt. 9, *Monongalia Cnty. Comm'n v. Stewart*, 914 S.E.2d 677, 681 (W. Va. 2024). The Defendants are sued in their individual capacities.   Therefore, the motion for summary judgment as to any claim for punitive damages must be denied.

## MOTION FOR JOINDER

Defendant Fisher's motion for joinder constitutes an untimely motion for summary judgment.   While joining another party's motion rather than filing duplicative briefs can be an efficient use of resources, attempting to join a motion more than a month after the dispositive motions deadline, after briefing on dispositive motions was complete, is not consistent with the Federal Rules of Civil Procedure.   Therefore, the motion for joinder should be denied, although it has little impact given that the Court has found Defendant Truitt's motion meritless.

11

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Agreed Motion to Extend Time Frame to File Reply* (Document 50) be **GRANTED**, that the *Defendants' Motion for Summary Judgment* (Document 39), filed by Defendant Lt. Truitt, be **GRANTED** as to Count Three, to the extent Count Three is asserted as an independent cause of action, and **DENIED** as to all other counts.  The Court further **ORDERS** that *Defendant M.W. Fisher's Motion for Partial Summary Judgment* (Document 43) be **GRANTED** to the extent it seeks judgment as to Count Three as an independent cause of action, and that *Defendant M.W. Fisher's Joinder to ECF No. 39 and ECF No. 40* (Document 52) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:      March 27, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

12